(No. 19067.—

Carl L. Fiedler *et al.* Appellants, *vs.* J. J. Eckfeldt *et al.* Appellees.

*Opinion filed April 20, 1929—Rehearing denied June 6, 1929.*

D. K. LINDHOUT, for appellants.

ABBOTT, ABBOTT & BISHOP, and TOLMAN, SEXTON & CHANDLER, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is a tax-payers' suit to restrain the negotiation and issue of bonds of Bloom Township High School District of Cook and Will counties and the use of any funds of the district in purchasing a new school site or building a new school house. The bill was filed on June 15, 1928, in

the circuit court of Cook county and an injunction was issued as prayed. On June 18 the defendants, who were the individuals acting as members of the board of education, the board of education and the township treasurer, answered. A general replication was filed on June 21, and on this day, on motion of the defendants, the preliminary injunction was dissolved. The complainants dismissed the bill as to the township treasurer on June 23, and on the same day the cause was heard on the bill, answer, replication and evidence, and the court entered a decree finding the equities of the cause with the defendants and ordering the bill dismissed for want of equity. The complainants, Carl L. Fiedler and Harry Funk, have appealed.

It appears from the evidence that on June 8, 1928, a special election was held in the district for the purpose of voting upon propositions to locate a school site, to purchase a school house site, to build a new school house, and to issue bonds of the district to the amount of $760,000. The election resulted in a vote in favor of all the propositions.

The reasons urged for the reversal of the decree are: (1) That the so-called Bloom Township High School District No. 206 of Cook and Will counties, Illinois, is not a high school district; (2) that legal notice of the election was not given; (3) that the form of the official ballots provided for the election was such that the voters had no opportunity to express their choice of a site for the high school; (4) that there was no canvass of the votes cast at the election; (5) that the amount of the bond issue involved, together with the previous indebtedness of the district, exceeds the constitutional limitation of the indebtedness which the district might incur.

The bill alleges that on May 21, 1900, five residents of the township of Bloom met and organized as officers of the township high school, and such organization has been since maintained under the style of Board of Education of Bloom Township High School District; "that said board

of education caused a building to be built for high school purposes on land purchased by them; that at various times additions were made to said main building, and other parcels of land purchased contiguous to said first purchase; that said high school building, with grounds, comprises about five and one-half acres;" that the records of Bloom township or Cook county do not show that Bloom Township High School District was ever organized according to law, and that no such record appears in the records of the county superintendent of schools, of the county clerk of Cook county, or of the town clerk, the trustees of schools or the school treasurer of Bloom township.

It is a proposition too firmly established and too well known to require the citation of authority, that the legality of the existence of a corporation cannot be inquired into collaterally but only in a direct proceeding by the State upon an information in the nature of *quo warranto*—and this applies to corporations *de facto* as well as corporations *de jure*. In an action purporting to be brought by a corporation the plaintiff is not required, even upon a plea of *nul tiel corporation,* to prove more than a *de facto* existence. This doctrine arises from the necessity of the case and the interest of the public in the stability and validity of business transactions with corporations. The rights and franchises which may have been usurped by a *de facto* corporation are the rights and franchises of the sovereign, who alone has the right to interpose, and until he does so the exercise of corporate powers under color of law must be regarded as rightful. Although an association may not be able to justify itself when called on by the State to show by what authority it assumes to be and act as a corporation, yet for reasons of public policy no one but the State will be permitted to call in question the lawfulness of its organization. Three things are necessary to constitute an association of persons a corporation: a law authorizing the

formation of a corporation with the powers assumed, an attempt in good faith to organize under such law, and a user of the powers conferred by it. There was a law authorizing the organization of township high school districts, and there has been a user for more than twenty-five years by the Bloom Township High School District of all the privileges and franchises conferred upon such district, known, recognized and acquiesced in by all the residents, voters and tax-payers of the district, as must be assumed from the fact that there are no allegations to the contrary. The bill does not allege facts showing any irregularity in the organization of the district. It alleges only that no record shows "that the Bloom Township High School District was ever organized in accordance with the laws of the State of Illinois." This is not an allegation that there is no record of the attempted organization of the district but is only the conclusion of the pleader that the record does not show a legal organization, without the statement of any fact on which to base such conclusion. It is consistent with the allegation that there was a complete record, at the time, of all the proceedings for the organization of the district, showing a compliance with every requirement of the statute, which has since been wholly or partially destroyed by fire or otherwise. There can be no doubt that there were some proceedings for the organization of the district which were in good faith, or the board of education would not have been permitted for twenty-five years to levy taxes, purchase a school site, build a school house, employ and pay teachers and conduct a school, all with money raised by taxation and all without objection. Under such circumstances the State itself would not be permitted to question the organization of the district by *quo warranto*. *People* v. *Hanker*, 197 Ill. 409; *People* v. *City of LeRoy*, 293 id. 278; *Jameson* v. *People*, 16 id. 257; *Soule* v. *People*, 205 id. 618.

The statute required ten days' notice of the election to be given by posting notices in three public places in each voting precinct in the district at least ten days before the day of election. It appeared by the record of the board of education and the testimony of its secretary, George Whitfield, that these notices were posted in three public places in each voting precinct in the district on May 29 and the election was held on June 8, which was ten days later. Because they were posted between three and four o'clock in the afternoon and the election began at noon and closed at seven the appellants argue that there was not ten full days' notice of twenty-four hours each. But the law does not regard fractions of a day unless it becomes important to the ends of justice to do so or in order to decide upon conflicting interests. (*Grosvenor* v. *Magill,* 37 Ill. 239.) The day is, in general, regarded as an indivisible unit of time, so that any act done in the compass of it is no more referable to any one portion of it than to any other portion. (*Levy* v. *Chicago Nat. Bank,* 158 Ill. 88.) The statute provides that "in computing the time for which any notice is to be given, whether required by law, order of court or contract, the first day shall be excluded and the last included, unless the last day is Sunday, and then it also shall be excluded." This act, which was passed in 1874, (Rev. Stat. chap. 100, sec. 6,) is but a statutory declaration of the law as it was construed before the enactment of the statute. Where a statute provides that ten days' notice shall be given of any action to be taken, in computing the time the first day is to be excluded and the last day included, and the action may be taken on the tenth day after the notice. (*Ewing* v. *Bailey,* 4 Scam. 420; *Vairin* v. *Edmonson,* 5 Gilm. 270; *Bowman* v. *Wood,* 41 Ill. 203; *Higgins* v. *Halligan,* 46 id. 173; *Harper* v. *Ely,* 56 id. 179; *Forsyth* v. *Warren,* 62 id. 68; *Magnusson* v. *Williams,* 111 id. 450; *Brown* v. *City of Chicago,* 117 id. 21; *Gordon* v. *People,* 154 id. 664; *People* v. *Snow,* 279 id. 289.)

The first day, May 29, being excluded, June 8 was the tenth day.

Another objection made to the notice of election was, that it did not show that a description of a site for the school house would appear on the ballot. The statute did not require this, and under a statute which said nothing on the question of the necessity of the notice of election having a statement that the ballots would show the sites or a site to be voted on, it was held that, the statute not requiring the notice of the election to specify the site or sites to be voted on, the specification of sites in the notice was surplusage. (*Thompson* v. *Trustees of Schools,* 218 Ill. 540.) The section of the statute under which this election was held was section 127 of the School law as amended in 1927, (Laws of 1927, p. 813,) which required that no site should be placed upon the ballot unless petitioned for by at least ten legal voters of the district but said nothing about any mention of it in the notice of election. This provision clearly contemplates placing on the ballot every site petitioned for in the manner prescribed by the amendment but has nothing to do with the notice.

It is insisted that the form of official ballot provided for the election was such that the voters had no opportunity to express their choice of a site for the high school. The ballot contained four propositions, the first having the heading, "Location of school site," underneath which appeared the direction, "Place a cross (X) in the space to the right of description of site for which you desire to vote," following which were the words, "Proposition to locate as a school house in and for Bloom Township High School District No. 206, Cook and Will counties, Illinois, the following described premises:" (A description of the premises known as the Wallace-Fleming site followed.) To the right of this description appeared an enclosed rectangular space in which the voter might indicate his choice, and below the description were the words: "If a voter prefers

a site other than the one above described such voter should write the description of such site in the space below and place a cross (X) in the space to the right thereof," with a space below and an inclosed space at the right. The other propositions succeeded in the following order:

"Purchase of school site and build a new school house.
"Place a cross (X) in the space to the right of the word indicating the way you desire to vote."

| "To authorize the board of education * * * to purchase a school house site in and for said school district | For |  |
|---|---|---|
| | Against | |

| "To authorize the board of education * * * to build a new school house in and for said school district | For |  |
|---|---|---|
| | Against | |

| "Authorized Bond Issue "To authorize the board of education * * * to issue bonds (specifying total amount of $760,000, when due, in installments from 1931 to 1948 and rate of interest)" | For |  |
|---|---|---|
| | Against | |

The objection made to this ballot is that it restricted the voters in their freedom of choice in regard to the location of the school house site; that a voter who wanted to vote in favor of the old site and against the Wallace-Fleming site could not do so without knowing the legal description of the old site. Every voter had a right to vote for any location he desired. The ballot on the question of location was in compliance with the law under which the election was held. It contained a description of the only site authorized to be placed upon the official ballot, together with the information required by the statute to be printed on the ballot. The voter who wanted to vote for another site, however, was not obliged to write on his ballot all the details required to appear on the official ballot. Any de-

scription by which the site for which he desired to vote could be identified would have been sufficient, and a vote for "the old site" or "the present site" would have served his purpose. The case of *O'Connor* v. *Board of Education*, 288 Ill. 240, to which the appellants refer, is not in point, for the proposition submitted to be voted upon in that case was "to build a new high school building * * * upon such new site as may be hereafter selected according to law and * * * to issue school building bonds of said district [Evanston Township High School District] to the amount of five hundred thousand dollars ($500,000) for the purpose of purchasing such new site when selected and of paying the cost of building a new high school building on such new site." It was held that the way the proposition was submitted, linking together the questions of a bond issue and the propositions both to build a school house and purchase a new site, made it difficult for the voter to determine how he could vote to express his desires on these questions, which he had the right to vote on separately. He might want to vote for a new building and a bond issue to pay for it and for a new site but against the bond issue to pay for it, or he might want to vote for the new building, to be paid for by a bond issue, but against the new site because he preferred the old one. Upon the proposition submitted he could not vote so as to express his wishes on these questions, and it was therefore held that the election was not free and equal. In this case the voter could have no difficulty in casting his vote on all the four questions. If he wanted to vote to build a new school house upon the old site and issue bonds for that purpose he could vote against the proposition to purchase a school house site and for the propositions to build a new school house and to issue bonds for that purpose, and, if he chose, he could vote for the old site. If he wanted to vote to build a school house on a new site he could vote for the propositions to purchase a school house site, to build a new school house

and to issue bonds, and for the site appearing on the ballot or for any site he chose to write on the ballot. Every voter could vote freely in favor of any site he wanted and for or against any one of the other three propositions submitted, and there was no inequality in an election so conducted.

The basis of the contention that there was no canvass of the vote or declaration of the result of the election is the fact that the canvass and declaration were made at a special meeting of the board held the next day after the election, at which all the members were present except the president, and the record of the meeting does not show that the meeting was called by the president or two members of the board, as required by section III of the School law. The high school district is required to have a president and a secretary, and it is the duty of the secretary to keep a record of the official acts of the board. It is only by the record so kept that any official action may be shown. Official action can be taken only at regular meetings held at the times designated by the members for such meetings or at special meetings called in the manner authorized by law. The record imports verity and is presumed to show the action taken at all regular or called meetings. Neither the statute nor any rule of the common law requires such a record to state that the action taken was at a regular or a special meeting. The school district is a *quasi* municipal corporation. The record is the record of the business transacted at its meetings, whether general or special, and the meetings are presumed to have been held in accordance with law and with the rules established by the corporation for the conduct of its business. It will be presumed until the contrary appears that the meetings were regularly held and the proceedings valid. (43 C. J. 501, 502; *State* v. *Smith,* 22 Minn. 218; *Rutherford* v. *Hamilton,* 97 Mo. 543; *People* v. *Rochester,* 5 Lans. 11; *Hudson County* v. *State,* 24 N. J. L. 718; *Staats* v. *Washington,* 45 id. 318;

*American Foundry Co.* v. *Berlin Board of Education,* 131 Wis. 220.) The burden was on the appellants to show that the meeting was not properly called, and no evidence of that kind was offered.

The most serious contention of the appellants is that the issue of the bonds in question would be a violation of section 12 of article 9 of the constitution, which provides that "no county, city, township, school district, or other municipal corporation, shall be allowed to become indebted in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five percentum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness." The assessed valuation of the taxable property in Bloom Township High School District for the year 1927 was $15,457,324 and it had $10,000 of bonds outstanding. The bond issue in question amounts to $760,000, making the total amount of indebtedness incurred and to be incurred $770,000. The limitation of the indebtedness which the district might incur is $772,866.20. The district includes school districts Nos. 166, 167, 168, 169, 170, 174 and 194, and parts of three others, Nos. 153, 171 and 172, all in Cook county, except three sections in Will county, being a part of district No. 194. Of these districts five have an assessed valuation and bonds outstanding as follows: No. 166, valuation $584,872, bonds $7000; No. 167, valuation $1,121,000, bonds $25,000; No. 169, valuation $614,295, bonds $13,000; No. 170, valuation $10,755,037, bonds $525,000; No. 194, valuation $1,303,278, bonds $52,000,— making a total bonded indebtedness of these districts of $622,000. The other districts have no bonds outstanding. It is insisted by the appellants that this bonded indebtedness of $622,000 must be taken into account in determining the limitation of the indebtedness which the high school district may incur, while the appellees contend that only the $10,000

outstanding bonds of the district and the $760,000 proposed to be issued should be taken into account.

Section 1 of article 8 of the constitution imposed on the legislature the duty of providing a thorough and efficient system of free schools, whereby all the children of the State may receive a good common school education. This was a command addressed to the legislature, and it has been construed as a limitation also on its power to provide for the maintenance by local taxation of free schools of a different character from that named in the section. It was not a grant of power, for the legislature has the inherent power to enact all laws proper for the government or welfare of the people of the State not prohibited by the constitution of the United States or of this State. (*Richards* v. *Raymond,* 92 Ill. 612.) The legislature gets no greater power from the command. When we look for the limitations on that power we find these two, and these two only, which the courts can enforce: that the schools shall be free, and that they shall be open to all equally. The court has enforced these limitations when the occasion requiring the enforcement of them arose. (*People* v. *Board of Education,* 101 Ill. 308; *People* v. *Mayor of Alton,* 193 id. 309; *People* v. *Moore,* 240 id. 408.) There are no others to which the judicial power extends.

The command of the constitution is addressed to the General Assembly alone. It was not a self-executing provision but required legislation to give it effect, and the responsibility and duty of providing the system and the means and agencies by which it should be made effective rest upon the General Assembly alone. It is no more within the authority of the court to pass judgment upon the thoroughness and efficiency of the system, or any part of it, than to determine whether the laws enacted for the protection of operative miners, in compliance with section 29 of article 4 of the constitution, are such as are necessary for that purpose; whether the action of the Governor in removing an

officer for incompetency, neglect of duty or malfeasance in office, under section 12 of article 5, is justified by the facts; whether where a special law has been enacted a general law could not be made applicable, in compliance with section 22 of article 4; whether the legislature has complied with section 6 of article 4 in passing a legislative apportionment act. All these questions have been held to be matters for legislative determination, with which the courts have no right to interfere. (*Chicago, Wilmington and Vermilion Coal Co.* v. *People,* 181 Ill. 270; *Wilcox* v. *People,* 90 id. 186; *Owners of Lands* v. *People,* 113 id. 296; *People* v. *Thompson,* 155 id. 451.) In fact, the General Assembly, many years before the adoption of the constitution of 1870, had provided a thorough and efficient system of free schools, and the laws enacted for that purpose were continued in force after the adoption of the constitution the same as before. Fundamentally the common school system now in force is substantially the same as that prescribed by the Revised Statutes of 1845. There was a revision of the School law in 1857 which has been the foundation of all subsequent legislation in regard to schools. Each congressional township was established a township for school purposes by the Revised Statutes of 1845. That provision has been included in every general school law since, and the township has been a body corporate and politic by the name and style of "Trustees of schools of township . . . . . . . . . . range . . . . . . . . . ," according to the number. The congressional township has always been the unit of the school system, in which trustees have been elected and school districts have been organized in accordance with the wishes or convenience of a majority of the inhabitants of the township. The wishes and convenience of the majority of the inhabitants of the territory affected have always been the controlling element in determining the organization of school districts, and such wishes have been indicated from time to

time either by petitions signed by a majority or more of the legal voters or by elections held for that purpose.

At the time of the adoption of the constitution of 1870 the whole State had been divided into school districts. "It is a part of the history of the State when the constitution was framed, that there was a great want of uniformity in the course of study prescribed and taught in the common schools of the State. In the larger and more wealthy counties the free schools were well graded and the course of instruction of a high order, while in the thinly settled and poorer counties the old district system was still retained and the course of instruction prescribed was of a lower order." (*Richards* v. *Raymond, supra.*) The constitution imposed no limitation on the legislature in respect to the system of schools which it should provide, except the two which have been mentioned: that the schools should be free and should be open to all equally. Soon after the adoption of the constitution of 1870 the legislature, in compliance with the command of the constitution to provide a thorough and efficient system of free schools, revised the School law by the adoption of the act of 1872, and by section 35 provided for the organization, as township high school districts, of any school township upon compliance with the requirements of the act by the voters of the township, who should thereupon elect a board of education of five members, who were required to meet within ten days after the election and organize by electing one of their members president and by electing a secretary. It was made the duty of the high school board of education to establish at a site or sites lawfully selected, one or more high schools for the education of the more advanced pupils. Soon after the passage of this act the bill in the case of *Richards* v. *Raymond, supra,* was filed in the circuit court of LaSalle county to enjoin the collection of a tax levied by the board of education of a township high school organized under the provisions of section 35 on the ground that the section was in conflict

with section 1 of article 8 of the constitution, for the reason that the school established was not a common school or a school where the children of the State might receive a good common school education, and was therefore inhibited by the constitution. The court sustained a demurrer to the bill and the decree dismissing the bill was affirmed, the court holding that the grading and classification of the schools so that scholars who may be more advanced may not be hindered or delayed in the progress of their studies by others less advanced was within the spirit of the constitution that contemplates the creation of a thorough and efficient system of free schools, and the levy and collection of a tax to maintain the schools was proper.

In 1889 the School law was revised by a new act covering the whole subject and repealing the act of 1872 and all other acts and parts of acts inconsistent with the new act and all general school laws of the State. (Laws of 1889, p. 256.) This act, by sections 38 to 42, retained the provisions of the act of 1872 for the organization of the school township into a high school district and was the law in force at the time of the organization of Bloom Township High School District. Section 42 provided that in like manner as a school township the voters of two or more townships might co-operate in the establishment and maintenance of a high school. Sections 41 and 42 of this act were amended in 1901. (Laws of 1901, p. 296.) This amendment added to section 42 the following: *"Provided,* that any school district having a population of at least two thousand (2000) inhabitants, may in the same manner as herein provided for establishing and maintaining a township high school, establish and maintain a high school for the benefit of the inhabitants of such school district, and elect a board of education therefor with the same powers hereby conferred on township boards of education." Soon after the amendment of 1901 school district No. 131 of Cook county availed itself of the privilege of establishing and

maintaining a high school and electing a board of education therefor, which, in the performance of the duty imposed on it by law, proceeded to establish and maintain a high school and proposed to issue bonds to the amount of $31,000 to procure funds to build a school house. The assessed valuation of the property within the district was $638,992. The limitation of indebtedness which the district might incur was therefore $31,996. The district was already indebted and had issued bonds to the amount of $16,500, and the two issues of bonds would make the indebtedness of the district more than seven per cent of the assessed value of the taxable property within it. A taxpayer of the district brought suit to enjoin the issue of bonds or contracting of any obligation which, with the existing indebtedness of the district, should exceed five per centum of the valuation of the taxable property of the district as acertained by the last assessment. The defendants answered the bill, admitting the allegations in regard to taxable property and indebtedness of the district, but alleging that the district had a population of 2418, that a high school had been established therein and was then known as Morgan Park High School District; that the district was not indebted on account of the establishment or maintenance of such high school, and that the proposed issue of $31,000 of bonds was not within the prohibition of the constitution. The cause was heard upon the bill and answer and the bill was dismissed for want of equity. On appeal this court reversed the decree and remanded the cause, with directions to enter a decree in accordance with the prayer of the bill, enjoining the issue of bonds or contracting of any obligation which, with the existing indebtedness of school district No. 131, should exceed five per centum of the assessed value of the taxable property therein as ascertained by the last assessment for State and county taxes previous to incurring the indebtedness. (*Russell* v. *High School Board,* 212 Ill. 327.) It was held that a high

school for the education of more advanced pupils is a school of the character required by the constitution, and any school district might establish and maintain a high school department; that the evident purpose of the School law of 1889, providing that any school township might, in pursuance of an election for that purpose, establish a township high school, and the township should be regarded as a school district for that purpose and the township board of education should have the powers and discharge the duties of directors of such district, was to enable a township or several school districts to establish a high school where it would be impossible or undesirable for single districts to maintain schools of that grade separately, but that when a single school district established a high school it did not become two districts, the one within and co-extensive with the other or the one superimposed upon the other. The establishment of the high school by the school district under the control of a different board of education was a mere division of existing powers of the school district between two boards of education, and it was not within the power of the legislature, by multiplying the boards of education in the same territory, to authorize the district to incur indebtedness beyond the constitutional limit.

After the decision of the *Russell case, supra,* the question arose as to the right of the high school board of education in school district No. 131 to levy a tax for educational purposes on the property in the district in addition to a tax levied by the directors of the common school district of two and one-half percentum on the assessed valuation of the district, which was then the limit which school directors could levy for educational purposes, and it was held, following the *Russell case,* that the district was a single district, that its taxing power was limited by the statute to two and one-half percentum of the assessed valuation of the property within the district, and that although there was no constitutional limitation on the right of the legislature to

fix such rates of taxation for school purposes as it might see fit, yet the legislature having fixed a limit of two and one-half per cent upon the power of the district to levy a tax, the two taxing authorities could not by their levies exceed that rate. (*People* v. *Read*, 233 Ill. 351.) After this decision, in the revision of the School law in 1909 the legislature provided that in a school district situated as school district No. 131 in the *Russell* and *Read cases*, the board of education of the high school district should have the same power to levy taxes and establish and maintain high schools as township high school boards of education, and such taxes should be in addition to those of the common school district. Laws of 1909, sec. 89, p. 367.

In *People* v. *Chicago and Illinois Midland Railway Co.* 256 Ill. 488, objection was made by an owner of real estate in school district No. 116 to judgment against his property for the high school tax in township 13 north, range 2 in Christian county, levied by the board of education for educational purposes. The township high school district in township 13 included eight school districts, one of which was district No. 116. The school directors of district No. 116 levied a tax of $1.50 on the $100 for educational purposes, which was extended against the property of the objector in district No. 116, and that tax was paid. The board of education of the township high school district for the same year levied a tax of sixty cents on the $100, which was also extended on the property of the objector in school district No. 116, making a total levy by the two bodies on the property in district No. 116 of $2.10 on the $100. Objection was made to the levy of sixty cents on the $100 on the ground that the two taxing bodies, the township high school district and district No. 116, were authorized to levy a tax of only $1.50 on the $100 for educational purposes, and in support of the objection *Russell* v. *Board of Education,* and *People* v. *Read, supra,* were relied on. The court distinguished the *Russell case* for the reason that it involved a

constitutional limitation on the incurring of a debt by a school district while there was no constitutional limitation on the amount of taxes which might be levied, and it distinguished the *Read case* on the ground that the tax involved in that case being a high school tax levied in a district whose boundaries were identical with the school district situated in the same township, the levy which could be made by the two taxing bodies, under the statute as it then existed, must be confined within the statutory limit for the district of $1.50 on the $100. It was stated that the doctrine of the *Read case* should be limited to the facts of that case, and it should not be held to apply to a case where the boundaries of the two districts were not coterminus but where one includes the entire territory of a township and the other only includes a small fraction thereof.

There is no constitutional restriction upon the legislature with reference to the formation of school districts or the agencies which it shall adopt to provide the system of free schools required of it by the constitution. High schools are as much a part of our system of free schools as district or grade schools, and it was and is the duty of the legislature, under the constitution, to provide for the establishment and maintenance of such high schools whenever in its judgment it should be done, subject to the constitutional limitations of freedom and uniformity. (*People* v. *Chicago and Northwestern Railway Co.* 286 Ill. 384; *People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* id. 414.) The first legislature which met after the adoption of the constitution passed the School law of 1872, which adopted as a part of the system of schools a classification whereby all the territory of the State should be laid off into districts, one or more in each township, to suit the wishes and convenience of the majority of the inhabitants of the township, in which the directors should establish and keep in operation for at least five months in each year, and longer if practicable, a sufficient number of

free schools for the proper accommodation of all children in the district over the age of six and under twenty-one years, and whereby, also, a high school for the education of more advanced pupils might be established and maintained in any school township upon a vote of the majority of the voters of the township in favor thereof. For the purpose of building a school house, supporting a school, and other necessary expenses, the township was to be regarded as a school district and the trustees were given the power to discharge the duties of directors of such districts in all respects. Thus the legislature obeyed the mandate of the constitution to provide a system of free schools whereby all children of the State might receive a good common school education. The necessity of a separation of the more advanced pupils from those of the lower grades is apparent. Whether the system adopted was the best which could have been devised is not a question for our consideration. The problems which arise in connection with the schools of the State are practical, and it is not always easy to see what is best. The wisdom of any action taken may be questionable. Even if the legislative intent might be thought crude or unwise and the law unjust or oppressive, errors of legislation are not subject to judicial review unless they exceed some limitation imposed by the constitution. Within those limitations the legislative power is supreme and judicial power cannot interfere with it. The constitutional limitation invoked in this case is not that no part of the territory of a school district shall become liable for an indebtedness to an amount, including existing indebtedness, in the aggregate exceeding five percentum on the value of the taxable property therein, but is that no school district shall be allowed to become indebted to such an amount. The decisions in the *Russell* and the *Read cases, supra,* held that there was but one school district, No. 131, operating different schools through the agencies of separate authorities which were merely different depart-

ments of the same district, for the reason that the districts were exactly coterminus.

In the case of *People* v. *Chicago and Illinois Midland Railway Co. supra,* the appellant sought to have the rule in the *Russell* and *Read cases* applied, but it was held by the court that the doctrine of the *Read case* should be limited to the facts in that case and should not be held to apply where the boundaries of the district are not coterminus. The *Russell* and *Read cases* were based upon the same facts, that the two districts were coterminus and the fact that in the one case the limitation was constitutional and the other statutory was immaterial. The high school district in this case was not coterminus with any of the other districts and is governed by the rule announced in *People* v. *Chicago and Illinois Midland Railway Co. supra.* The high school district is a district separate from any of the school districts, whose territory is included in whole or in part within the high school district. The bonds, when issued, will be the obligations of the high school district, only, and not of any of the other districts.

The limitation of the constitution involved here was invoked in the case of *Wilson* v. *Board of Trustees,* 133 Ill. 443, and the court, after quoting section 12 of article 9, said: "It would be difficult to employ language making it plainer that the prohibition is on each corporation singly, and not upon two or more in the aggregate. The boundaries of this sanitary district are not coterminus with those of the city of Chicago or of any other municipality, nor are the persons and property within its limits the same, or substantially the same, as those within the limits of the city of Chicago or of any other municipality. The district was organized, pursuant to an affirmative vote of the electors within its limits, as a municipal corporation for sanitary purposes entirely distinct from and independent of the government of the city of Chicago and of that of every other municipal corporation, and it has municipal authorities of

its own, elected by the electors within the district, pursuant to the requirements of its charter, whose functions are in nowise connected with any other municipal government. The case is therefore wholly unlike *Dunham* v. *People,* 96 Ill. 331, where it was held the park district was for the city of Chicago. This corporation is as independent of every other municipal corporation as is a township under township organization, and the case is therefore analogous to *Wabash, St. Louis and Pacific Railway Co.* v. *McCleave,* 108 Ill. 368, where it was held that a like objection was untenable."

The decree is affirmed.                   *Decree affirmed.*