(No. 32032.

Donald McLain *et al.*, Appellants, *vs.* Omar Phelps *et al.*, Appellees.

*Opinion filed June 18, 1951.*

A. C. Bohm, of Edwardsville, for appellants.

Donald M. Buckley, of Edwardsville, and Charles & Trauernicht, of St. Louis, Mo., for appellees.

Mr. Justice Gunn delivered the opinion of the court:

Donald McLain and Floyd Radcliff, as residents, citizens and taxpayers, filed a complaint in the circuit court of Madison County, to enjoin the board of education of Roxanna Community Unit School District No. 1 of Madison County, hereafter referred to as Roxana District, from issuing or disposing of any part of a certain bond issue in the sum of $1,500,000. The defendants made a motion to dismiss, which was allowed by the court. An appeal is taken to this court on the ground that not only is the construction of the constitution, but the validity of a statute, involved.

An agreed case was filed under Rule 48 of the Supreme Court, and a stipulation between the parties as to the facts and points of law involved. The stipulation and agreed facts are as follows:

"1. That Plaintiffs are residents, citizens and taxpayers of the Roxana Community Unit School District No. 1, Madison County, Illinois.

"2. That the Defendants are members of the Board of Education of Roxana Community Unit School District No. 1, Madison County, Illinois.

"3. That the Roxana Community Unit School District No. 1, Madison County, Illinois, was organized on March 5th, A.D. 1949, and that it assumed its corporate functions on July 1, 1949.

"4. That the Roxana Community Unit School District No. 1, Madison County, Illinois, at the time of its organization combined all of School District No. 103, all of Community High School District No. 156 and a small fraction of Community High School District No. 144.

"5. That at the time of said organization the Roxana Community Unit School District No. 1, Madison County, Illinois, had an assessed valuation of $30,459,733.00, and that School District No. 103 had a bonded debt of $169,000.00, and Community High School District No. 156 had a bonded debt of $90,000.00, and that the fraction of Community High School District No. 144, Madison County, Illinois, in said District No. 1, had no bonded debt and that the total bonded debt of $259,000.00 was assumed by Roxana Community Unit March 5th, 1949, when it was organized.

"6. That certain territory lying North of the Roxana Community Unit, hereinafter referred to as Rosewood Heights, was prior to March 1, 1950, in the Community Consolidated School District No. 152, and that in the year 1949 said School District had an assessed valuation of $6,431,355.00 and a bonded debt of $180,500.00.

"7. That the aforesaid territory, Rosewood Heights, was prior to March 1, 1950, also located in the Civic Memorial Community High School District which in the year 1949 had an assessed valuation for the year of $7,382,965.00 and a total bonded debt of $336,000.00.

"8. That on the 14 day of September, 1949, a petition was filed with the County Court requesting that the territory known as Rosewood Heights be detached from Community Consolidated School District No. 152 and Civic Memorial Community High School No. 100 and that said territory be annexed to Community·Unit School District No. 1 and that on the 1st day of March, 1950, the prayer of said petition was allowed.

"9. That for the year 1950 the County Clerk of Madison County, pursuant to Chapter 122, Paragraph 19-33, did proportion the amount of bonded indebtedness of said District No. 152 and District No. 100, and charged the same to Community Unit School District No. 1, Madison County, Illinois, and that the County Clerk has charged to

said Community Unit School District No. 1, 17.22% of said District No. 100 bonded debt, which is $57,859.20, and 19.77% of said District No. 152 bonded debt, which is $35,684.85, making a total bonded debt charged to said District No. 1, for the territory known as Rosewood Heights, of $93,544.15.

"10. That the total assessed valuation for the year 1949 of the said Rosewood Heights Area annexed to Roxana Community United School District No. 1, located in said District No. 100, was $1,271,345.00, and the Area located in District No. 152 was $1,271,480.00.

"11. That the aforesaid territory known as Rosewood Heights, which is now a part of Roxana Community Unit No. 1, has an assessed valuation of $1,271,345.00 and outstanding bonds which are a lien on the property located in said Area in the amount of $93,508.00 and which amount is 7.3% of the assessed value of said Area.

"12. That the assessed value of the entire Roxana Community Unit for the year 1950 (including the Rosewood Heights Area) is $36,698,260.00 and that the total bonded indebtedness of the entire District (including the Rosewood Heights Area) is $333,508.00, and which bonded debt represents .098% of the assessed value of the entire District.

"13. That the Roxana Community Unit School District No. 1 was authorized by the electorate of said District on the 31st day of March, 1951, to issue $1,500,000.00 School Site and Building Bonds, and which amount is less than 5% of the assessed valuation of the entire Community Unit School District No. 1, Madison County, Illinois.

"14. That if said $1,500,000.00 School Site and Building Bonds are issued the Area known as Rosewood Heights will have a bonded school debt in excess of 10% of the assessed valuation of said Area.

"15. That pursuant to said election the Board of Education of Roxana Community Unit No. 1, Madison County, Illinois, will unless restrained by an order of this Court

issue $1,500,000.00 School Site and Building Bonds, and increase the debt limit of said District from 2½% to 5% of the assessed valuation of said District."

The stipulation further provides that the points of law arising from the aforesaid agreed facts are as follows:

"1. Does the bonded debt solely of the area referred to as Rosewood Heights which is in excess of 5% of the assessed valuation of property in the area known as Rosewood Heights preclude the entire Roxana Community Unit School District No. 1, Madison County, Illinois, from issuing bonds up to 5% of $36,698,260.00 (the total assessed valuation of the Roxana Community Unit School District No. 1), less the outstanding debt of Schools Districts Nos. 103 and 156, totaling $240,000.00 and the proportional bonded debt of Districts Nos. 100 and 152 totaling $93,544.15?

"2. Does the Roxana Community Unit School District No. 1, Madison County, Illinois, having a total assessed valuation of $36,698,260.00, have authority to issue approximately $1,500,000.00 School Site and Building Bonds, or is it prohibited from the issuance of any bonds for the reason that it violates Article 9, Paragraph 12, of the Constitution of the State of Illinois?

"3. Does the Roxana Community School District No. 1, Madison County, Illinois, having a total valuation of $36,698,260.00, have authority to issue approximately $1,500,000.00 School Site and Building Bonds, or is it prohibited from the issuance of any bonds for the reason that it violates Chapter 122, Paragraph 19-33, of the Illinois Statutes 1949?

"4. Is Chapter 122, Paragraphs 19-32 and 19-33, valid?"

The first legal point for decision is the effect of imposing upon the Rosewood Heights part of the territory of the Roxana District the burden of a bonded indebtedness in excess of 5 per cent of the assessed value of the property

therein, because previously incurred debt and its proportionate part of the bond issue involved herein will exceed in the aggregate the constitutional limit on the property within the Rosewood Heights section of the Roxana District.

It must be constantly kept in mind that the constitution has imposed upon the General Assembly a duty to establish a thorough and efficient system of free schools, and this provision has been construed as permitting the legislature unrestricted authority with reference to the formation of school districts and the agencies which it shall adopt to provide the system of free schools required by the constitution. Thus, the statutes authorize several different types of organized school districts, each of which may provide special advantages for the particular territory in which it is organized. We have repeatedly held that the question of the efficiency and fairness of the school system, established by legislative action, is solely one for the legislature to answer. *Wilcox* v. *People ex rel. Lipe,* 90 Ill. 186; *Chicago, Wilmington and Vermilion Coal Co.* v. *People,* 181 Ill. 270; *Fiedler* v. *Eckfeldt,* 335 Ill. 11.

The latest type of school organization created by the legislature under the grant of power in the constitution is a Community Unit School District, as set forth in sections 8-9 to 8-14 of article 8 of the School Code. (Ill. Rev. Stat. 1949, chap. 122, pars. 8-9 to 8-14.) This type of school organization was held valid in *People* v. *Deatherage,* 401 Ill. 25. It is thus clear that a community unit school district is a separate municipal organization for the conduct of a type of school within the territory created in a manner provided by statute, and with taxing powers similar to those of other school organizations.

It is likewise clear, if not specifically admitted, that part of the territory in Rosewood Heights was a part of the Community Consolidated School District No. 152, also a legally created organization for the conduct of public schools; and, also, that the part of Rosewood Heights

located in Civic Memorial Community High School District No. 100, was a legal school organization authorized by statute to carry out the mandate of the constitution in providing a system of free schools.

Thus, we have a situation, as shown by the agreed statement, in which the Roxana District includes certain territory and that territory embraces a part of school districts which were parts of separate school organizations, but nevertheless legally created under separate provisions of the statutes. Each of these parts of the districts, including a part of Rosewood Heights, were parts of districts which had authorized bond issues for school purposes, and in District No. 152 the proportion thereof unpaid and included in the Roxana District was $35,684.85, and in District No. 100 the sum of $57,859.20, or a total of $93,544.05, of outstanding bonds at the time of the organization of the above district. This amount, as well as other bonds of other districts assumed by the Roxana District, as required by section 19-32 of article 19 of the School Code, made the total issue of bonds in all territory the sum of $333,508, before organizing the Roxana District.

The issue of bonds authorized by the election was $1,500,000 in addition, which created a total indebtedness of $1,833,508, which, as stipulated, was less than 5 per cent of the value of taxable property in the Roxana District. However, it is apparent that the part of the district which included portions of the two described school districts in Rosewood Heights was already indebted on bonds which aggregated 7.3 per cent of the value of the taxable property, as is disclosed by the figures set out in the agreed statement of facts. When the levy for the $1,500,000 in bonds is spread upon the entire district, which covers a part of these two districts, the burden of bond payments from all sources in this particular part of the Roxana District will exceed 10 per cent of the assessed value of the property.

Appellants invoke section 12 of article IX of the constitution, which provides: "No county, city, township, school district, or other municipal corporation, shall be allowed to become indebted in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, * * *." It is to be observed that the language of the constitution is that *no school district or other mentioned municipal corporation shall become so indebted.* It does not provide that property within a given territory shall not be subject to debt in excess of 5 per cent of the assessed valuation, as it is common knowledge that the combined debt of a city, county, school district and other municipal corporation including a common territory, in the aggregate, is often far in excess of 5 per cent, and if the rule were applied to the *property,* and not to the *power* of each separate taxing district, municipal corporations would be hampered and restricted far more than ever contemplated.

The difficulty of appellants' position is more apparent than real. If this question arose between a city and a school district concerning their separate indebtedness, as applied to a common territory, it would be perceived without argument that they were separate debtors, and that each was separately controlled by the provisions of the constitution. In the present case we have, as far as the Rosewood Heights territory is concerned, debts imposed upon the taxable property therein from three separate school organizations,—first, the Roxana District, which places upon the whole territory a bonded debt of $1,500,000, or approximately a little over 4 per cent; and there is also imposed upon this territory the obligation created by Community Consolidated School District No. 152, and the obligation of Civic Memorial Community High School No. 100, together amounting to 7.4 per cent of the taxable

property, the aggregate of all of which is, of course, far in excess of the constitutional limit.

The point, however, is that the debt is created by separate statutory municipal corporations, and the prohibition of the constitution is against the individual or separate municipal corporation from becoming obligated in excess of 5 per cent of the value of the taxable property in the district. That point is specifically decided in *Fiedler* v. *Eckfeldt*, 335 Ill. 11, where the same question was argued and decided. The same provision of the constitution was invoked in that case, and we held there that such constitutional limitation is not that a *part* of the territory of the school district shall not become liable for an indebtedness exceeding 5 per cent of the value of the taxable property therein, but that *no school district* shall be allowed to become indebted in such an amount, and, therefore, we held that the constitution was not violated because the debt of a part of the territory absorbed by the school district in question was burdened with a previous obligation which together with that of the defending district exceeded 5 per cent.

In the case of *Wilson* v. *Board of Trustees,* 133 Ill. 443, after quoting the constitutional provision involved, the court said: "It would be difficult to employ language making it plainer that the prohibition is on each corporation singly, and not upon two or more in the aggregate. The boundaries of this sanitary district are not coterminus with those of the city of Chicago, * * *. This corporation is as independent of every other municipal corporation as is a township under township organization, and the case is therefore analogous to *Wabash, St. Louis and Pacific Railway Co.* v. *McCleave,* 108 Ill. 368, where it was held that a like objection was untenable." And in *Kocsis* v. *Chicago Park Dist.* 362 Ill. 24, as bearing upon an analogous situation, we said: "There is no contract between citizens of a particular municipality and the municipal corporation that

the property within the particular territory shall not be taxed for the benefit of another municipal corporation or district to which it may be annexed, even though the tax is assessed to raise money to pay bonds or obligations voted and incurred by the municipality or district prior to the annexation." It seems to us there can be no escape from the decision in the *Fiedler case,* nor the logic of the situation, since the debt created by the Roxana District does not violate the constitution.

Appellants rely upon *Russell* v. *High School Board of Education,* 212 Ill. 327, and *Spence* v. *Selcke,* 404 Ill. 98, to sustain their position. The *Russell case* was distinguished in *Fiedler* v. *Eckfeldt,* 335 Ill. 11, as having no application to a situation such as this. As a matter of fact the debt attempted to be imposed in the *Russell case* was the debt of the same district, which had two boards of education, one for the district school and the other for the high school, since previous to that time it had been held that a school district could be authorized by law to have two boards of education, one for the grade school and another for the high school. Hence, in addition to what was said in the *Fiedler case,* it clearly appears that the indebtedness was created by one district and not two districts, and, hence, was clearly violative of the constitution. Nor do we think the case of *Spence* v. *Selcke,* 404 Ill. 98, has any application to the present situation, because sections 19-32 and 19-33 of article 19 were not yet enacted by the legislature, and these sections did not become the law until after the situation complained of in the *Spence case* had arisen. Section 19-32 in particular was doubtless enacted to cover situations such as arose in the *Spence case,* and since the debt of the Roxana District was not created until after the enactment of this law, the only consideration to be given the *Spence case* is the validity of section 19-32, even assuming that the *Spence case* applied to the case presented in the present record.

Appellants also cite the case of *People ex rel. Bailey* v. *Illinois Central Railroad Co.* 407 Ill. 426, which we are unable to see has any application to the questions involved in this case. Counsel for appellants have also cited a number of cases from other jurisdictions which appear in some instances to partially sustain their contention, but when we have a construction of our own constitution and laws by our own courts we rarely abandon the rule established in our courts to follow those of another jurisdiction. (*Northwestern University* v. *Industrial Com. ante,* p. 216.) We are clearly of the opinion that the issue of bonds in the Roxana District does not violate section 12 of article IX of the Illinois constitution.

However, it is contended that sections 19-32 and 19-33 of article 19 of the School Code are unconstitutional or invalid, but no reason is pointed out in the briefs as grounds for this contention other than it is asserted there is a duplication of the imposition of taxes contained in the two sections, and hence, if so construed, would bring the indebtedness above the constitutional limit. We think, however, that an examination of these sections of the School Code discloses they have separate purposes and do not conflict or overlap each other. Section 19-32 makes provision for the event that a community unit school district may embrace all of the territory of another school district which has an outstanding bond issue. That is the situation disclosed in this case, and School Districts Nos. 103 and 156, each of which are wholly within the territory of the Roxana District, have outstanding bond issues. Section 19-32 provides that if such a district, so embraced in a new school district, has outstanding bonds, the payment thereof shall be assumed by the newly created school district, and it shall be the duty of the county clerk to ascertain the rate necessary to pay the principal and interest of all outstanding bonded indebtedness from an examination of the bond resolutions on file in his office, and extend and collect

taxes necessary for such purpose from all of the taxable property in the district which absorbs another one. Since section 19-32 requires the new school district to assume the payment of bonds of an underlying district lying wholly within it, it necessarily follows it becomes a part of the debt of the unit district, which must be reckoned in ascertaining the total bonded debt. It has been specifically held by this court that a statute authorizing a municipal corporation to assume the debts of another corporation with which it is consolidated or annexed does not violate any provision of the constitution. *Kocsis* v. *Chicago Park District*, 362 Ill. 24.

Since the resolution authorizing the creation of such a debt in the annexed district is already on file, the clerk, in extending the rate, will examine not only that resolution but also the resolution which creates the additional indebtedness. Thus, in the present case the bonded indebtedness of the two districts absorbed amounts to $240,000. The bonds issued by the vote of the people in the Roxana District amount to $1,500,000, making a total indebtedness created by the issue of bonds, together with those assumed, of $1,740,000, which is well within the constitutional limit.

It has not been pointed out to us, nor can we by independant investigation determine, how this violates any constitutional provision, since, as noted above in this opinion, the constitution has given to the General Assembly the power to pass all laws suitable and necessary for the establishment of a thorough and efficient system of free schools. It does not violate the debt restrictions contained in the constitution, nor, so far as we are advised, any other restrictions imposed upon school legislation.

Appellants contend that section 19-32 conflicts with section 19-33, but examination will disclose that they have different purposes and relate to different subject matters. Whereas section 19-32 makes provisions for school districts, having outstanding bond issues which were wholly absorbed

or contained within a new school district, section 19-33 has application only to the territory contained in a unit district which is a part only of another district which has an outstanding bond issue. The subject matter of section 19-33 has relation to the computing of the debt-incurring power, and provides that when a part only of another school district which has outstanding bonds is taken into the unit district, the proportionate amount of the bonded indebtedness that the assessed value of the territory taken bears to the assessed value of the whole territory shall be counted in ascertaining the debt-incurring power.

The Roxana Unit District embraces a part of two other districts, and it is agreed that the total proportionate amount of the bonded indebtedness of these two underlying districts, which should be included in ascertaining the debt of the community district, is $93,508, so that when this last-mentioned sum is added to the amount of $1,740,000, mentioned above, the total amount that must be assumed in computing the debt-incurring power is $1,833,508, whereas Roxana Unit District has a total debt-incurring power, under the stipulated assessed value of the property in the district, of $1,834,903. Hence, with the debt which is actually created of $1,500,000, together with that assumed in the two districts which are completely embraced in the unit district, added to the proportionate amount of the bond issues outstanding of the district a portion of which is taken, the total indebtedness does not violate section 12 of article IX of the constitution.

It is contended, however, that the proviso of section 19-33 renders the section invalid. This proviso reads as follows: "provided, however, the territory of the former school district as it existed when such bonded indebtedness was incurred shall remain liable for the bonded debt as if not divided, and the County Clerk or County Clerks of the counties in which such former school district is situated shall extend the taxes against such territory of such former

school district each year in an amount sufficient to pay principal and interest as it matures as indicated by the bond resolutions on file in their respective offices." In simple language this part of section 19-33 means that when a unit district annexes a part of a district which has outstanding bonds, the original district is still liable for its debts, based upon the bond resolutions originally adopted therein, and this places the part of the district thus absorbed in exactly the same position as discussed first above in this opinion, *viz.*, a debt created in the first instance by one district and the new debt created in another district, which is extended over the whole territory in the new unit district. As pointed out in the *Fiedler case*, this does not constitute a violation of section 12 of article IX of the constitution. There can be no constitutional objection to treating a part of a district which is absorbed or embraced within the unit district differently from the situation of one that is wholly absorbed or embraced.

Essentially, however, section 19-33 provides only a rule for computing the debt-incurring power, and, since it requires a unit district to include, in the amount of bonds which the law permits to be issued, the debt of the annexed part of another district, for computation purposes, it cannot possibly violate section 12 of article IX, because it decreases the bonding power rather than increases it. The essential difference between sections 19-32 and 19-33 is that the former provides for an assumption of bonded indebtedness in districts that are wholly absorbed by unit districts, whereas section 19-33 provides a measure for ascertaining the limit of the amount of bonds that may be issued by the unit district, and the proviso simply retains the law where it was before its enactment, *viz.*, the underlying district, where a part only is taken, is liable for its own debts.

The construction of the statutes and constitution above set forth answer, we believe, all of the queries propounded

by counsel in the present case, and since they result in our determination that the bonds authorized to be issued by the Roxana Community Unit School District No. 1 in Madison County do not violate the constitution, nor are authorized by an invalid statute, it necessarily follows that the decree of the circuit court of Madison County was correct, and it is therefore affirmed.

*Decree affirmed.*