(No. 32952.—

THE PEOPLE *ex rel.* Golden Ashwill, County Collector, Appellee, *vs.* ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

*Opinion filed November 18, 1953.*

JOSEPH H. WRIGHT, H. J. DEANY, and EDWARD J. WRIGHT, all of Chicago, and CRAIG & CRAIG, of Mattoon, for appellant.

AUGUST C. TAYLOR, State's Attorney, and WILTON A. CARR, both of Toledo, for appellee.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

The Illinois Central Railroad Company appeals from a judgment of the county court of Cumberland County which overruled its objection to the application of the county collector for judgment of sale for nonpayment of 1951 taxes levied for building purposes by Community Unit School District No. 77.

The rate extended for building purposes was 25 cents, the maximum authorized rate for the district. (Ill. Rev. Stat. 1951, chap. 122, par. 8-9.) The controversy turns upon whether or not that rate should have been reduced because taxes were also levied to pay principal and interest upon certain outstanding school building bonds.

The pertinent statutory provision is section 17-7 of the School Code. That section directs the county clerk to ascertain the amount necessary to pay principal and interest requirements "on any bonds of the district" and to extend a separate tax for bond and interest requirements. It continues: "If the rate for the amount levied and certified by the proper authorities of any such district for building purposes when added to the rate necessary to pay the maturing principal or sinking fund requirements of and interest on any such bonds equals or exceeds the maximum rate for building purposes which the district may levy under the provisions of Sections 17-2 to 17-5, inclusive, it shall be

extended notwithstanding the fact that it exceeds the building rate; provided, that if the bond and interest requirements equal or exceed the maximum building rate which the district may levy under the provisions of Sections 17-2 to 17-5, inclusive, the county clerk shall, regardless of the provisions of such sections, extend in addition to the rate necessary to pay the bonds and interest or sinking fund requirements therefor, a rate * * * for building purposes * * * not to exceed .125 percent * * *." Ill. Rev. Stat. 1951, chap. 122, par. 17-7.

To understand the statute, it is necessary to refer to *People ex rel. Hutchcraft* v. *Louisville and Nashville Railroad Co.* 396 Ill. 502. In that case the statutory progenitor of the present section 17-7 was interpreted to mean that when a school district levies taxes for the payment of bonds and interest, and also for building purposes, the full bond and interest rate is to be extended, but the rate for building purposes is to be reduced so that the total of the two rates will not exceed the maximum permissible rate for building purposes. To avoid the possibility of complete elimination of the building purpose levy, the statute also provides that in no event shall the building purpose rate of a district such as this one be reduced below 12½ cents per $100 of assessed valuation. Such minor changes as have been made since the *Louisville and Nashville case* was decided in 1943 have not altered the basic meaning of the section.

Under section 17-7 so interpreted, the objector contends that the maximum permissible rate for building purposes for District No. 77 was .125 per cent, while the collector argues that the statute is not applicable to the building purpose tax rate of District No. 77. To understand these contentions, a statement of the history of Community Unit District No. 77 and related school districts is necessary. Community Unit School District No. 77 was organized pursuant to an election held August 14, 1948. With the

exception of about fifteen sections of land, it includes the territory which was formerly embraced in Community High School Districts Nos. 124 and 125. It also includes some land, less than a full section, which was never included in either of the two community high school districts.

The two community high school districts were organized in May of 1945. Each of these districts duly issued and sold $200,000 worth of bonds. No part of the proceeds of either bond issue was expended by the issuing district. All of the proceeds of both bond issues ultimately came into the possession of District No. 77, and were used by that district to pay a portion of the cost of constructing a new school building.

For the year 1951 the county clerk of Cumberland County extended a rate of 14.1 cents to provide for a levy of $14,050 to pay the principal and interest on the bonds which had been issued by Community High School District No. 125. This rate was extended against the property of District No. 125, which had an assessed valuation of $10,677,267. For the year 1951 the county clerk also extended a rate of 18.5 cents to provide for a levy of $12,912.50 to pay the principal and interest on the bonds which had been issued by Community High School District No. 124. This rate was extended against the property of District No. 124, which had an assessed valuation of $7,357,691. The assessed value of the taxable property of Community Unit School District No. 77 for the year 1951 was $16,470,754.

The objector argues that the bonds issued by Community High School Districts Nos. 124 and 125 must be regarded as bonds of District No. 77, and that the tax rates of 18.5 cents on account of the bonds of District No. 124 and of 14.1 cents on account of the bonds of District 125 must be regarded as rates levied by District No. 77. If these rates are considered as rates levied by District No. 77, the argument continues, section 17-7 of the School Code

becomes applicable, and by the operation of that section the maximum permissible rate of District No. 77 for building purposes is reduced to 12½ cents. On this basis it is contended that the building purpose rate of District No. 77 is illegal to the extent that it exceeds 12½ cents.

The objector concedes that the facts of this case do not fall within the language of section 17-7, because District No. 77, whose building purpose rate is attacked, has never issued any bonds and has not become obligated to pay the bonds of the underlying districts, and so the bond levies here involved were not levied to pay bonds "of the district" as section 17-7 provides. But the objector goes beyond the language of the statute, saying: "It is appellant's contention that Section 17-7 was really meant by the legislature to read that the County Clerk, in determining the rate, should determine the amount necessary to pay for any bonds 'for which a tax has been levied against any territory' of the district or 'outstanding against any territory' of the district." The objector also argues that "Since District No. 77 received the benefit of these bonds, it should bear the legal consequences which follow."

These arguments carry us far afield from the statutory provision upon which the objector's case must rest. Statutes governing the organization of school districts and their tax rates must necessarily be applied to a host of diverse situations throughout the State. They are therefore couched in broad terms of general applicability and do not ordinarily attempt to take precise account of particular equities which may exist in specific situations. Section 17-7 is itself illustrative. Its application might drastically curtail the operation of one school district, while its effect upon the operations of another might go unnoticed. But even if we were dealing with a statute which contemplated that its operation should depend upon a judicial determination of the equities of its application in individual instances, the record before us would not furnish a sufficient basis for such a determina-

tion. Much more would need to be known as to the relationship between the various school districts here involved, their respective school populations, their total assets, physical and otherwise, their liabilities, and the distribution of assets and liabilities among the various districts involved. But the argument need not be pursued, for it is clear that we are not warranted in rewriting the statute in the manner the objector suggests.

Seeking support by way of analogy from other statutory provisions, the objector directs our attention to section 19-32, which was in effect when the tax here involved was levied. That section provided that upon the creation of a school district such as District No. 77, "the bonded indebtedness of all the underlying school districts lying wholly within said newly created school district shall be assumed by the newly created school district." (Ill. Rev. Stat. 1951, chap. 122, par. 19-32.) Referring to this section, the objector argues that "If District No. 77 embraced all of the territory (instead of almost all) formerly lying in the old high school districts, then the County Clerk would have had to spread these bond levies over the entire territory * * *" of District No. 77. If that was done a rate of 16.4 cents would have been necessary to raise the amount required for bonds and interest, and under section 17-7 the county clerk could only have extended a rate of 12½ cents for building purposes.

The answer to this argument is that the liability of a new district, which like District No. 77 includes only part of the territory of the underlying districts which have outstanding bond issues, is governed by a different section of the School Code. Section 19-33 provides that in cases of partial inclusion the outstanding bonds of the underlying districts shall be taken into account in determining the debt limit of the new district. It also provides: "however, the territory of the former school district as it existed when such bonded indebtedness was incurred shall remain liable

for the bonded debt as if not divided, and the County Clerk or County Clerks of the counties in which such former school district is situated shall extend the taxes against such territory of such former school district each year in an amount sufficient to pay principal and interest as it matures as indicated by the bond resolutions on file in their respective offices." Ill. Rev. Stat. 1951, chap. 122, par. 19-33.

*McLain* v. *Phelps,* 409 Ill. 393, construes sections 19-32 and 19-33, and distinguishes between them. In that case this court said: "Whereas section 19-32 makes provisions for school districts, having outstanding bonds issues which were wholly absorbed or contained within a new school district, section 19-33 has application only to the territory contained in a unit district which is a part only of another district which has an outstanding bond issue. * * * The essential difference between sections 19-32 and 19-33 is that the former provides for an assumption of bonded indebtedness in districts that are wholly absorbed by unit districts, whereas section 19-33 provides a measure for ascertaining the limit of the amount of bonds that may be issued by the unit district, and the proviso simply retains the law where it was before its enactment, *viz.,* the underlying district, where a part only is taken, is liable for its own debts." Under section 19-33, District No. 77 could not, had it so desired, have extended a tax against all of its property for the purpose of paying the principal and interest of the bonds issued by the two community high school districts.

By amendments to the School Code adopted in 1953, (Ill. Rev. Stat. 1953, chap. 122, pars. 4B-12, 19-9, 19-33,) the General Assembly has provided a method for the allocation of the obligation of underlying bond issues which differs substantially from that which was in effect at the time of the levy here in question. It is unnecessary to recite in detail the new statutory plan. It is sufficient to

note that while the statute now contemplates that bonds of the underlying districts shall become the obligations of the new district, whether the absorption is partial or total, explicit provisions appear to be made for a full accounting of existing assets and liabilities between the districts upon the basis of school population. Ill. Rev. Stat. 1953, chap. 122, pars. 4B-12—4B-24.

In our opinion, section 17-7 of the School Code has no application to the tax levy here involved. The judgment of the county court of Cumberland County is affirmed.

*Judgment affirmed.*