The county treasurer of Sangamon county, ex officio county collector, applied to the county court of that county for judgments and orders of sale for the delinquent taxes levied in 1939. The appellees, Chicago, Burlington Quincy Railroad Company, the Receivers of Wabash Railway Company, the Alton Railroad Company, Illinois Central Railroad Company, Chicago 
Illinois Midland Railway Company, Illinois Terminal Railroad Company and *Page 122 
Chicago and Northwestern Railway Company, filed separate objections to certain taxes levied against their respective properties. One objection common to all appellees was as to a part of the taxes levied by the Board of Education for the Non-High School District of Sangamon county. All of the objections to the non-high school tax were consolidated before the hearing. All were sustained and the collector has brought the record here for review. The appellees have all joined in the same brief.
The non-high school district did not pay all its current debts for the year 1934. The deficit was approximately $5000. This continued to increase until in February, 1939, it was a little more than $150,000. Starting in November, 1934, there were several detachment proceedings whereby various areas of the non-high school district were detached from it and added to a district maintaining a high school. In all there were fourteen of such areas, the last area being detached May 7, 1938.
Appellees' objections are as to the taxes levied on their respective properties located in these various detached territories. The claim is that the levy violates the provision of section 9, article 9, of the constitution, which requires all taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same.
In January, 1939, the board of education of the non-high school district started proceedings leading to a bond issue, the proceeds of which were to be used in funding or paying the indebtedness of $150,000. A final resolution authorizing the issuance of bonds in said amount was passed February 17, 1939. This bond issue was validated by an act of the General Assembly. (Laws 1939, p. 1082; Ill. Rev. Stat. 1941, chap. 122, par. 406.9.) The bonds were dated February 15, 1939, drew interest and matured serially to and including 1957. Provision was made in the resolution for the calling of certain bonds prior to date of *Page 123 
maturity, the aggregate of those to be called was $40,000. They could be paid on any interest-paying date not later than December 15, 1942.
Included in the resolution which authorized the issuance of the bonds was a provision that "there be and there is hereby levied upon all of the taxable property in said non-high school district a direct annual tax sufficient to produce amounts in the following years collected in the next succeeding year." The amount fixed to be levied for the year 1939 was $14,876, which was for interest up to and including June 15, 1941. Various amounts were levied for the succeeding years to and including 1957. Provision was also made in the resolution, copy of which was filed with the county clerk, whereby that official was directed to ascertain the rate necessary to produce the tax provided for and to extend the same on the taxbooks against all of the property situated within the district. The amount so levied was to be in addition to that levied for general corporate purposes.
In 1937, the School Law was amended by adding section 94e. (Ill. Rev. Stat. 1941, chap. 122, par. 102e.) It provides that when any non-high school district had theretofore been and still was indebted, or had thereafter become indebted, the territory constituting the district when the indebtedness was incurred should be liable for such indebtedness even though a part of the territory had been detached from the non-high school district and had ceased to be a part of it. Provision is made for the filing of a map with the county clerk showing the territory embraced in the district both before and after the detachment proceedings, and a certification of the amount of the indebtedness remaining unpaid at the time the boundaries are changed. The board of education of the non-high school district determines and certifies to the county clerk the amount of tax required for the purpose of paying the indebtedness and the clerk *Page 124 
is directed to extend a rate of tax upon all such territory so liable for the indebtedness. At the time this statute became effective nine of the detachment proceedings in this case had been completed.
In 1939, the School law was further amended by adding section 94f (Ill. Rev. Stat. 1941, chap. 122, par. 102f.) Its provisions apply to a non-high school district which has incurred indebtedness and thereafter lost a part of its territory through detachment proceedings and has subsequently issued bonds for the payment of the indebtedness and levied a tax to pay the principal and interest of the bonds as they became due. The statute makes it the duty of the board of education of the non-high school district "to recoup" from the territory so detached a proportionate amount of the bonded indebtedness. The indebtedness for which the bonds were issued was allocated and no question is raised as to such allocation. Section 94f further provides "having concluded such allocation, the Board shall annually levy a tax upon all the taxable property in the territory so detached until the amount of the obligations so allocated to that territory shall have been fully collected therefrom. Such tax shall be levied and collected at the same time and in the same manner as other taxes for the corporate purposes of such district are levied and collected, but shall be levied by a separate certificate which shall be filed with the County Clerk, and which shall state the boundaries of such territory. Such tax shall not be subject to any limitation as to rate or amount, and may be levied in one year or in more than one year, as the Board shall determine." Provision is made that when collected such tax shall be placed in the sinking fund of the treasury of the non-high school district and used solely for the purpose of paying the principal and interest of such bonds as they become due. It provides that if any of the bonds issued has a prepayment privilege, the money so collected from *Page 125 
the detached territory may be used in the payment of said bonds and the board of education is then directed to abate the tax levied to pay the bonds for such year or years as shall be proper to avoid the necessity of collecting taxes to pay bonds so called for prepayment. If areas have been detached at different times, the allocation shall apply to each area detached. Such allocation proceedings were required to be started prior to July 1, 1941.
In October, 1939, the board of education of the non-high school district filed a certificate with the county clerk certifying that $50,000 was needed for the payment of tuition. The board also filed with the same official a certificate for each of the fourteen detached areas in which the amount to be levied as a special tax from the detached territory was set forth. The amount of each certificate was equal to one half of the indebtedness which had been allocated to that particular territory. As a result of the levy contained in the bond resolution the county clerk fixed a rate of twenty-six cents for the purposes of paying principal and interest on bonds. This rate was levied on the taxable property that remained in the district after the several areas had been detached. Such rate produced the amount set forth in the resolution as due for principal and interest for that year. The rate fixed to be levied against the taxable property in the fourteen detached areas varied, dependent upon the difference in the amounts of the debt allocated and the assessed valuation of the taxable property. Those rates varied from a minimum of fifty cents to a maximum of $1.15. The total indebtedness allocated was $84,126.95 and the levies extended would have raised one half of that amount.
Appellees claim that if the property in any detached territory is required to pay its allocated part of the indebtedness, it should be by an annual levy at the rate fixed for the taxable property remaining in the district. It is *Page 126 
pointed out that the levies for bond purposes against the taxable property remaining in the district extend to and include 1957 while under the method followed it is proposed to collect from the detached territories one half of their allocated debt in one year.
Appellees have so limited their objections that it is necessary to consider the scope open for inquiry. Their position is best stated in their brief where they say:
 "It is only to this non-uniformity of rates that we make objection.
"We have entertained, and still have, doubts as to the constitutionality of this act by which the detached territories were sought to be reached but as to the year's levy here in question have waived this consideration and have objected only to the various excess rates above Twenty-six Cents — which was the rate in the regular, then constituted non-high school district for the bond payment.
"We objectors have heretofore been willing to pay our share of this bonded obligation in the detached districts but insist we are liable to be taxed only at the same, and no higher, rate than the taxpayers remaining in the Non-High district. * * *
 "We are not here contending that the act is bad but rather that the action of the Board was invalid as to the excess rates. We simply leave it in a position where the act can stand and where a good tax can be levied under it. * * * We do say that these excess levies above Twenty-six Cents are invalid as being unconstitutional. There is clear lack of uniformity in rate and thereby the requirement of uniformity of the Constitution is violated."
Appellees contentions constitute a waiver of a constitutional attack upon section 94f insofar as that section undertakes to authorize a board of education of a non-high school district "to recoup" a part of a bonded indebtedness from a detached area but they do challenge the result obtained by the Board's application of the statute on the grounds it violates the constitutional requirement of uniformity. This opens for consideration the effect of the detachment proceedings on the detached areas, the application of the statute and the board's jurisdiction over such areas. *Page 127 
In the absence of statutory authority, the rule is that the part of a school district or other municipal corporation which remains after parts have been detached retains all its property, powers, rights and privileges and remains subject to all its obligations and duties. (People ex rel. High School District v.Bartlett, 304 Ill. 283; People ex rel. Richberg v. Trustees ofSchools, 86 id. 613.) When the bonds were issued in February, 1939, section 94f had not been enacted. The fourteen areas in question had all been detached. There being no statute, the result of the detachment of the areas was that the remainder of the district remained liable for the whole of the bonded indebtedness. The resolution authorizing the issuance of the bonds, passed February 17, 1939, recognized such liability and in providing for a tax to pay the bonds and interest, directed that it be extended against the taxable property in the territory remaining in the district. The rate of twenty-six cents fixed by the county clerk for 1939 was in accord with the directions contained in the resolution and when extended against the taxable property remaining in the district produced the amount as fixed by the resolution as due on the bonds for that year.
As the law then was, the board of education could not levy a tax against the taxable property in the detached territory for the payment of a part of the bonded indebtedness. (People v.Bartlett, supra.) In People ex rel. Shrout v. Long, 328 Ill. 297, it was said: "The law is well settled in this State, that the powers of a school district to levy taxes are limited to the property within the boundaries of the district at the time of the levy and any attempt to levy a tax on property in territory detached from such district is illegal." In School Directors v.School Directors, 135 Ill. 464, p. 478, it was said: "The power of the directors of Union District No. 4 to levy school taxes is limited to the property within its present boundaries and *Page 128 
any attempt to levy a school tax by them in the detached territory is illegal and may be enjoined by any taxpayer prejudicially affected." Under the decisions referred to, it is evident that prior to the enactment of section 94f the fourteen detached territories would be deemed to be outside the jurisdiction of the non-high school district and the board of that district would be without authority to levy a tax upon the property in such detached areas. Assuming the statute to be a valid enactment and authorizing such procedure, it follows that it must be assumed that the detached areas have been properly brought back into the district so as to extend the jurisdiction of the board over them for the limited purpose of taxation.
The power of the board to levy a tax on such areas for the purposes stated in that act is not different from the power it exercises in levying a tax to pay bonded indebtedness over the territory that has never been detached. It is the levying of a tax to pay the same bonded indebtedness — i.e., bonds that were issued to pay a debt incurred when all the detached territory was within the district. Giving the statute the effect of having brought the detached areas within the jurisdiction of the non-high school district, the constitutional provision that the taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same must be applied. The taxable property in each of the detached areas and the area remaining in the district should have been at a uniform rate.
Appellant contends the effect of the statute was to create a taxing district out of each of the detached areas with the board of education of the non-high school district having power to levy the tax. This argument is advanced in support of appellant's theory that the rate had to be uniform only as to each detached area. Section 9 of article 9 of the constitution authorizes the legislature to vest municipal *Page 129 
corporations with power to assess and collect taxes for corporate purposes. The levy of a tax for the payment of the bonded indebtedness was for a corporate purpose but the constitutional provision is a limitation upon the vesting of the power to tax and the legislature cannot vest such power in any municipal corporation other than the one for whose corporate purpose the tax is to be levied.
Appellant cites and earnestly contends that his theory is supported by the holding in People ex rel. Neil v. Knopf,171 Ill. 191. On page 199 of the opinion, it was said: "It is well settled by a number of cases that section 5 of article 9 of the constitution of 1848 and section 9 of article 9 of our present constitution, which relate to the same subject, are a limitation upon the power of the legislature to confer the power to assess and collect taxes on any other than the corporate or local authorities of the municipalities or districts to be taxed." It was held that under the statute relating to township organization the county board was constituted the corporate authority for the town of Lake with full power to levy taxes for the town of Lake. The holding was that the rule of uniformity must be preserved on an assessment within the town but that there was nothing to prevent the board from making a levy that would raise one amount in the town of Lake and a different amount in another town. The purposes for which the tax was raised in the various towns were not related to each other as the purpose for which the tax is to be raised in the instant case. There is nothing in that case in conflict with the conclusions reached.
For the reasons assigned, the judgment of the county court is affirmed.
Judgment affirmed. *Page 130