(No. 31110.—

GEORGIA ANN SPENCE *et al.*, Appellants, *vs.* FREDERIC B. SELCKE, County Clerk, Appellee.

*Opinion filed September 22, 1949.*

S. S. DuHAMEL, of Springfield, and N. E. HUTSON, of Monticello, for appellants.

JOHN E. GROSBOLL, State's Attorney, of Petersburg, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

The appellants, who are owners of taxable property consisting of approximately 26 sections of land located in the eastern part of Menard County, filed a complaint in the circuit court of said county, seeking to enjoin the appellee, who is county clerk of Menard County, from extending on his books any taxes against the property of the appellants for the purpose of paying any part of the sum levied for the year 1948 by the Board of Education of former Community High School District No. 200 of Menard County, to pay part of the principal and interest of certain

bonded indebtedness incurred by such former Community High School District No. 200.

The complaint states that the appellants are the owners of said property and that on April 3, 1948, the board of Education of Community High School District No. 200 of Menard County issued bonds in the amount of $300,000, and to secure the payment of these bonds, by resolution duly adopted at the time of issuance, the district levied a tax to pay the bonds. In the resolution, taxes for each of the years in which the bonds matured were levied for the years 1948 through 1962, inclusive, in decreasing amounts ranging from $40,500 for the year 1948 to $20,700 for the year 1962. The complaint further states that a certified copy of the resolution was filed in the office of the appellee on April 13, 1948, and that on said date, and at the time of issuance of such bonds, Community High School District No. 200 did not contain any of the territory owned by the appellants. On May 1, 1948, Community Unit School District No. 200 of Menard County was established, which unit district contained all of the property included in the original Community High School District No. 200 and also all of the property owned by the appellants herein. The complaint charges that the appellee, on the advice of the Attorney General of Illinois, threatens to levy taxes on and against all of the property situated in the Unit School District No. 200, which would constitute a levy of taxes against not only the territory in Community High School District No. 200, but also against all of the property added by reason of the establishment of Unit School District No. 200. It is also alleged in the complaint and denied in the answer that the extension of taxes upon the properties of the appellants would violate the provisions of section 19-9 of the Illinois School Code.

It appears from the record that prior to May 1, 1948. the property of the appellants was incorporated in Community High School District No. 408, which had, prior to

said date, contracted bonded indebtedness in the amount of $100,000. Also, prior to May 1, 1948, Community High School District No. 200 had contracted a bonded indebtedness as set forth in the complaint.

The court below found for the appellee, and appellants come to this court contending that under the provisions of section 19-9 of the Illinois School Code (Ill. Rev. Stat. 1947, chap. 122, par. 19-9,) taxes levied by a school board to pay a bonded indebtedness should be extended by the county clerk only upon the property contained in the district at the time of the registration of the bonds. The appellee relies on an opinion of the Attorney General of the State of Illinois obtained by the State's Attorney of Menard County on December 27, 1948, wherein the Attorney General of this State, on the authority of *People* v. *Deatherage,* 401 Ill. 25, and *Kocsis* v. *Chicago Park Dist.* 362 Ill. 24, stated that the taxes and the bonded indebtedness of former Community High School District No. 200 should be spread over the entire Unit School District No. 200 and that Community High School District No. 408 as it existed before the detachment of the property of appellants would be compelled to bear the entire tax burden on its bonded indebtedness. The further questions answered by the Attorney General are not pertinent to this decision and will, therefore, not be quoted.

The appellants contend that the court and the Attorney General erred in that, by the opinion of the Attorney General and the decree of court, the appellants will be compelled to pay a part of the bonded indebtedness of High School District No. 408 and also a part of the indebtedness created by the former Community High School District No. 200, and that, as the result of such procedures, they will be paying taxes for two bond issues covering two separate schoolhouses, one in District No. 408 and one in Unit School District No. 200.

The appellants rely in the main on section 19-9 of the School Code (Ill. Rev. Stat. 1947, chap. 122, par. 19-9,) which provides that whenever any school district of population less than 500,000 is authorized to issue bonds, the recording officer shall file in the office of the county clerk of each county in which any portion of the district is situated a certified copy of the resolution providing for the issuance of and levying a tax to pay the bonds. The statute goes on to provide, "The county clerk annually shall extend taxes against all the taxable property situated in the county and contained in the district as of the date of the registration of the bonds in amounts sufficient to pay maturing principal and interest,  *  *  *."

The appellants argue that this provision clearly indicates it was the legislative intent that taxes levied to pay school bonds should be levied only against the property of the district as it existed at the time of the issuance of the bonds. The appellee contends that the sole question before this court is whether the bonded indebtedness becomes the debt of the newly formed Community Unit District No. 200 to be spread proportionately over such district in its entirety or whether such indebtedness is to be retired by taxing only that property located within the boundaries of former Community High School District No. 200 as it existed at the time the bonds were registered, and contends that the question before us was fully answered in *People v. Deatherage*, 401 Ill. 25, and *Kocsis v. Chicago Park District*, 362 Ill. 24, cited in the *Deatherage case*. *People v. Deatherage* involved a *quo warranto* proceeding instituted by the State's Attorney of Morgan County to question the validity of the organization of a school district and the right of the defendants to hold office as members of the board of education. To determine the issues, this court construed and determined the constitutionality of sections 8-9 to 8-14, inclusive, of article 8 of the School

Code. In holding the statute constitutional, we quoted from *People* v. *Kocsis,* as follows: "When two or more municipalities are combined, the resulting municipal corporation includes the persons and places of the several municipalities, and it has the same property and owes the same debts which they all had and owed. The identity of the component elements in such cases is lost and becomes absorbed into the new creation. [Citations] Where two or more municipal corporations are consolidated or the entire territory of one municipal corporation is annexed to another, unless the legislature otherwise provides, the contracts and indebtedness of the corporations which are consolidated or annexed become the contracts and indebtedness of the consolidated or annexing corporation, and the latter is vested with the power to raise revenue wherewith to pay them by levying taxes upon the real and personal property of the persons residing therein." We went on to say, "The above is applicable to the situation where school districts are automatically dissolved when a community unit school district is organized." The quotation set forth arose out of a charge that the Community Unit School Act was so ambiguous and uncertain in its application as to be violative of the due process of law provisions of the State and Federal constitutions, (section 2, article II, Illinois constitution, 14th amendment Federal constitution,) in that the act does not provide what is to happen to the bonded indebtedness and current obligation of districts automatically dissolved. We pointed out in considering this problem that sections 19-30 and 19-31 of the School Code (Ill. Rev. Stat. 1947, chap. 122, pars. 19-30 and 19-31,) take care of such contingency when territory is detached from an existing school district. It did not appear in the *Deatherage case* whether or not the organization of the school district involved resulted in the fractioning of one or more underlying districts. The question there involved and decided was that such a situation

was not determinative of whether or not any school district remaining after a fractioning would lack efficiency and thoroughness.

The precise point involved here as to the construction and application of section 19-9 of the School Code was not considered in the *Deatherage case* nor was the problem before this court. In that case the portion of *Kocsis* v. *Chicago Park Dist.* quoted involved the consolidation of two or more municipal corporations or situations where the entire territory of one municipal corporation is annexed to another. The approval given in the *Deatherage case* to the citation of the *Kocsis case* was limited to that portion of the *Kocsis case* holding that under such circumstances the contracts and indebtedness of all were consolidated and became the contracts of the new corporation. To this extent the cases are distinguishable.

To reach a conclusion purely on the distinguishing features of the *Deatherage* and *Kocsis cases,* however, would be to beg the question presented to this court as to the applicability of section 19-9 of the School Code. Section 19-31 provides that if any territory is detached from a school district having a bonded debt, the original school district shall remain liable for the payment of each bonded debt as if not divided, and the recording officer of each school district, as to all bonds outstanding and unpaid, shall file in the office of the county clerk of each of the counties in which such school district or any part thereof is situated a certified copy of each resolution providing for the issuance of such bonds and for the levy of a tax to pay the principal of and the interest thereon. Insofar as School District No. 408 is concerned, we interpret this section to mean that all property within School District No. 408 at the time of the issuance of such bonds shall be taxed for such bond issue, which would include the property of the appellants. The question then remains as to whether or not section 19-9, by its direction that the county clerk

annually shall extend taxes against all the taxable property situated in the county and contained in the district as of the date of the registration of the bonds, is so designed as to prevent the application of the doctrine enunciated in *Kocsis* v. *Chicago Park District,* cited in *People* v. *Deatherage.* The appellee contends that section 19-9 of the School Code (originally enacted in 1927,) was for the obvious purpose of eliminating the necessity of having a certificate of a joint board to extend bond taxes on territory which was a part of the district at the time of the issuance of the bonds and later detached, as required by section 19-30 of the School Code. The difficulty with this contention is that section 19-30 has not been changed by the enactment of section 19-9 and is still applicable and requires a certificate of the joint board in situations where territory is set off from a district having a bonded debt and the change was not petitioned for by a majority of the legal voters of the district.

What effect, then, can be given to section 19-9, unless it be construed in accordance with its plain language? Neither the *Deatherage case* nor the *Kocsis case* was concerned with the establishment of a Community Unit School District nor were they concerned with a condition where only a portion of another municipal corporation was consolidated into a new corporation in turn comprising all of another municipal corporation. It is plainly stated in section 19-9 that the county clerk annually shall extend taxes against all taxable property in the county contained in the district as of the date of registration of the bonds. We can see no other meaning that can be given to this language other than as a limitation provided by the legislature, removing the case before us from the doctrine stated in *People* v. *Deatherage,* 401 Ill. 25, and *Kocsis* v. *Chicago Park District,* 362 Ill. 24. To establish the contention of the appellee as law would be to disregard the language of section 19-9 in its entirety and to require the appellants in

this cause to pay taxes on the bonded indebtedness of two separate and distinct school districts, one of which they would have no right to use. There is nothing in the cases or the arguments of counsel which will justify any belief that such was the intention of the legislature in providing for community unit school districts or in the application of any of the provisions of the School Code.

The appellee argues that the fact that a heavy burden might result because of the lower court's holding is a matter to be considered by the legislature and not by the court and is merely a coincidence and should have no bearing on our decision in this matter. To so hold would be violative of our conception of law and justice. The fact that the appellants must pay taxes to satisfy the bonded indebtedness of School District No. 408 is as much a part of this cause as the question of their duty to pay taxes on the bonded indebtedness of Community Unit School District No. 200. It is to be noted that Community Unit School District No. 200, as such, has no bonded indebtedness other than that which came to it by reason of the inclusion in its boundaries of Community School District No. 200. At such time as Community Unit School District No. 200 should issue additional bonds, there is no question but that the appellants herein would be required to pay taxes for the payment of such indebtedness. Nor is there any question but that the appellants herein will be required to pay taxes for school purposes other than bonded indebtedness and as provided for by the legislature in its enactments. To require them to pay, however, taxes for the redemption of the bonded indebtedness of two separate and distinct school districts is without the bounds of the limitations set forth in section 19-9.

There is another ground to support our holding herein. Section 19-9 provides that whenever a school district is authorized to issue bonds the recording officer shall file in the office of the county clerk a certified copy of the resolu-

tion providing for the issuance and levying a tax to pay them. We have held that the powers of a school district to levy taxes are limited to the property within the boundaries of the district at the time of the levy. (*People ex rel. Shrout* v. *Long,* 328 Ill. 297.) The appellee contends that the word "levy" as used in this case, (and it must follow as used in section 19-9 of the School Code,) refers only to the act of extending the tax each year. We cannot agree with this argument. First, the resolution levying a tax to pay the bonds of Community High School District No. 200 was itemized explicitly and exactly. The only thing remaining to be done by the county clerk for any of the years from 1948 to 1962, inclusive, was the extension of the tax as levied upon the properties in the school district at the time the bonds were issued. We can see no other meaning of the word "levy" than that ordinarily given it and we can see no purpose or excuse in construing the meaning of the word to refer to the extension of the tax each year. Secondly, to adopt the argument of the appellee in this regard would be to hold that the appellants herein were not required to pay taxes on the bonded indebtedness of Community High School District No. 408. Such a holding would contravene the express language of section 19-31 and, in effect, either declare such section unconstitutional or give it no meaning. We are cited no authority nor given any reason to justify so holding.

For the reasons stated herein, the judgment of the circuit court of Menard County will be reversed and the cause will be remanded, with directions to the circuit court of Menard County to enter a judgment for the appellants not inconsistent with the opinion herein.

*Reversed and remanded, with directions.*