(No. 39564.—)

THE PEOPLE *ex rel.* Board of Education of Junior College District No. 300, *et al.,* Petitioners, v. ROBERT M. COLLINS, Secretary, Respondent.

*Opinion filed April 25, 1966.*

KIRKLAND, ELLIS, HODSON, CHAFFETZ & MASTERS, of Chicago, (JOHN M. O'CONNOR, JR., of counsel,) for petitioners.

SMITH & TADDEO, of River Grove, (HARRY M. SMITH, JR., of counsel,) for respondent.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is a petition for original writ of *mandamus* filed in this court by petitioner, Board of Education of Junior College District No. 300, Cook County, to compel respondent, Robert M. Collins, as secretary of such district, to sign certain bonds sold by Triton Junior College District. The issue in dispute is the effect of the Public Junior College Act (Ill. Rev. Stat. 1965, chap. 122, pars. 101—1 *et seq.*) on bonds voted by junior college districts prior to enactment of said act.

The Public Junior College Act (House Bill 1710 of the 74th General Assembly) became effective July 15, 1965.

The act sought to elevate and provide state-wide standards for education at the junior college level. The act made every junior college a class II junior college district and provided standards to uprate them to class I districts.

The Board of Education of Triton Junior College District maintained a junior college in Northlake, Cook County. On March 25, 1965, the district at an election was authorzide to issue $8,900,000 of School Site and Building Bonds to finance the acquisition of land and erection and equipping of junior college buildings. The board accepted the proposal of McDougal and Condon, Inc., to purchase the bond issue, and authorized a bond issue, setting out terms. Certified copies of this resolution were filed with the county clerk, providing for extension of the tax required to service principal and interest payments on these bonds. Thereafter the statute in issue was enacted and approved.

The respondent, secretary of the board, refused to sign the bonds, stating he doubted that the bonds of Triton Junior College District would be a liability of Triton Class II Junior College District under the new law, but would be so only if it became a class I junior college district. *Mandamus* is sought to require the secretary to sign such bonds and interest coupons.

The parties concede that prior to the effective date of the Public Junior College Act, the district had completed all acts required for the issuance of the school-site and building bonds here in issue, other than the signature thereto by respondent secretary, and that issuance of these bonds would not result in an indebtedness exceeding the district's constitutional debt limit.

Section 104—4 of the act provides: "Any Class II junior college district that prior to the effective date of this Act was a junior college district may levy the tax rate established by the former junior college district, * * * and shall succeed to all assets, receivables and liabilities of such Class II junior college district and the board of edu-

cation of a Class I junior college district, if any, that succeeds the board of education of the Class II junior college district shall have the power to complete all building programs, proceedings for the issuance of bonds, which bonds may be issued in the name of the Class II or Class I junior college district, as the case may be, and all other legal business not completed by the board of education of the former junior college district."

Petitioner contends that the intent of the legislature, although imperfectly expressed, is to treat a class II junior college district as succeeding to the powers to levy taxes, State aid, physical assets and liabilities, power to complete building programs of bond issuances and all other unfinished legal business of the "former junior college district." It is further contended that the portion of section 104—4 which provides that "the board of education of a Class I junior college district, if any, that succeeds the board of education of the Class II junior college district shall have the power to complete all building programs, proceedings for the issuance of bonds, which bonds may be issued in the name of the Class II or Class I junior college district, as the case may be, and all other legal business not completed by the board of education of the former junior college district" intends a class II district to succeed to the programs and bonds of a "former" junior college district and obviously could not have meant it to succeed to those of a class II junior district.

Respondent contends the plain meaning of the section is that class II districts do not assume the former junior college district's assets, receivables, liabilities and power to complete building programs or bond issuances until they became a class I junior college district. Therefore, respondent contends, until Triton Class II Junior College District becomes a class I district the bonds here sold cannot be lawfully issued. He further contends that the intention of the legislature being thus expressed, the courts cannot con-

strue otherwise, for to do so would invade the legislative domain, contrary to the State constitutional provision relating to separation of powers.

A reading of the entire statute discloses that the manifest intent of the legislature was to enact a comprehensive reorganization of the junior college system in Illinois. Clearly, the legislature did not intend that petitioner must apply as a class I junior college district and await evaluation of its educational standards and approval of its site acquisition and building programs before it became empowered to issue and sell bonds issued and sold by the former district prior to the effective date of the Public Junior College Act.

A similar issue presented itself in *People ex rel. Community High School Dist. v. Hupe*, 2 Ill.2d 434, 447. There we said: "If the language of the section is to be literally construed, the result will be that the petitioner's debt-incurring power will be reduced to a figure where it will be unable to furnish educational facilities * * *."

Further in the *Hupe* case (p. 448) we said: "Again, we have held that where the literal enforcement of a statute would result in great injustice or absurd consequences, courts are bound to presume that such consequences were not intended and to adopt a construction which, it is reasonable to assume, was contemplated by the legislature. When the legislative intention can be gathered from a consideration of all the legislation on the subject, words of a particular section may be modified or altered so as to obviate all inconsistency with such intention."

We cannot conceive that the legislature intended other than that the system was to consist of class I and class II junior college districts, of which the former·junior college districts would become class II districts under the new system and succeed to and be subject to all rights, powers, duties, assets and liabilities of the former districts. To adopt respondent's construction of the act would defeat

the legislative plan. Applying the well recognized rules of statutory construction of legislative intent as set forth in the *Hupe* case and in other cases such as *People ex rel. Barrett* v. *Anderson,* 398 Ill. 480, *Du Bois* v. *Gibbons,* 2 Ill.2d 392, it is clear that the legislature by this act intended class II junior college districts to succeed to all powers, assets, liabilities and completion of business of the districts they succeeded. To construe the statute as having any other meaning, would be to disrupt the junior college program, which is farthest from the legislative intent in enacting this statute.

Hence, it is the duty of respondent to carry out his official duty of affixing his signature to the bonds and to the coupons by facsimile signature or otherwise as provided in the bond resolution. He is hereby directed and commanded to do so.

*Writ awarded.*